IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


SHAWN DAVID LIVINGSTON,          :
                                 :
            Petitioner           :
                                 :
      v.                         :      CIVIL NO. 3:CV-09-1278
                                 :
DAVID PITKINS,                   :      (Judge Conaboy)
                                 :
            Respondent           :

_____

**MEMORANDUM**
**Background**

          This pro se petition for writ of habeas corpus pursuant to

28 U.S.C. § 2254 was initiated by Shawn David Livingston during

his confinement at the Laurel Highlands State Correctional

Institution, Somerset, Pennsylvania (SCI-Laurel Highlands).[1]

Named as Respondent is SCI-Laurel Highlands Superintendent David

Pitkins.  Service of the petition was previously ordered.

          Livingston was convicted of possession with intent to

deliver cocaine and criminal use of a communication facility

following a jury trial in the Adams County, Pennsylvania Court of

Common Pleas.  Those charges stemmed from Petitioner's arrest at

the residence of Jeffrey Flickinger.  A summary of facts as

established by the Pennsylvania state courts provides that

Flickinger began regularly purchasing cocaine from Livingston

a/k/a Shorty in November, 2003.  On January 16, 2004, members of

_____

          [1]  Petitioner is presently residing in Freeman, Virginia.
See Doc. 27.

1

the Adams County Drug Task Force executed an unrelated search
warrant at Flickinger's home during which drug paraphernalia was
seized.   After being given his <u>Miranda</u> rights, Flickinger
admitted to selling cocaine from his home and identified his
cocaine source as being a Black individual from New York named
Shorty.   Flickinger added that he would be willing to contact
Shorty and arrange a delivery of cocaine to his residence.   After
telephoning and telling a person described as being Shorty that
he had a buyer seeking an ounce of cocaine at his home,
Flickinger informed the authorities that Shorty would be arriving
within twenty (20) minutes with the requested cocaine.

        The Task Force set up surveillance both inside and outside
of Flickinger's residence and two additional calls were placed to
Shorty.   Within two minutes of the last call, Livingston/Shorty
parked a car in front of Flickinger's home and walked to the
front porch of the residence.   When he stepped inside, officers
identified themselves, at which time the Petitioner fled.
Livingston was apprehended in a neighbor's yard and taken into
custody.   A baggie which Petitioner tossed while being chased was
recovered and found to contain three (3) individual parcels of
cocaine.

        Livingston was taken inside the Flickinger home and when
he overheard an officer, Detective Hartlaub, express doubt as to
whether the substance tossed by Petitioner was actually cocaine,

2

Livingston stated to Hartlaub from another room that the cocaine was real.[2]  In addition, the number on a cellphone seized from Petitioner matched the number that had been called by Flickinger in an effort to contact Shorty.  Livingston also acknowledged that he was a resident of Bronx, New York.  Based upon the above factors, Petitioner was arrested and charged with possession with intent to deliver cocaine and criminal use of a communication facility.

Petitioner's privately retained trial counsel filed a pre-trial motion to suppress the contraband seized on January 16, 2004 as well as his statement to Detective Hartlaub.  Trial counsel also sought via a motion in limine to preclude introduction of any prior bad acts testimony by Flickinger counsel.  Those matters were addressed in a May 21, 2004 pre-trial suppression hearing.  By Order dated May 28, 2004, Petitioner's pre-trial motions were denied.  A jury trial subsequently commenced on June 10, 2004.

After being convicted on both charges, Petitioner was sentenced on October 25, 2004, to an aggregate six (6) to fifteen (15) year term of imprisonment.  Following a direct appeal, Petitioner's conviction and sentence were affirmed by the

---

[2]  Analysis by the Pennsylvania State Police laboratory subsequently confirmed that the substance in the three recovered packets was 20.6 grams of cocaine.

Pennsylvania Superior Court.  See Commonwealth v. Livingston, 888 A.2d 8 (Pa. Super. 2005).  The direct appeal asserted that the trial court erred by: (1) not suppressing information and evidence derived from an unauthorized interception of oral communication; (2) allowing admission of statements of prior bad acts made without substantiation by a confidential informant whose reliability was not established; (3) not suppressing statements made by Livingston prior to being given his Miranda warnings;[3] (4) determining that there was probable cause to arrest Petitioner without a warrant based upon a confidential informant's statement; and (5) denying Petitioner's pro se motion for modification of sentence.  See Doc. 1, p. 3-a.

Petitioner then initiated a pro se action pursuant to Pennsylvania's Post Conviction Relief Act (PCRA).[4]  Following appointment of counsel, submission of an amended petition, and an evidentiary hearing, the trial court denied the PCRA petition on March 31, 2008.  An appeal of that decision was denied by the Superior Court on June 4, 2009.  Livingston's PCRA action alleged that trial counsel provided ineffective assistance by: (1)

---

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

[4] One of the avenues for relief in the Pennsylvania legal system is collateral relief under the PCRA, "which permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

failing to either object to incriminating prior bad acts testimony or request a curative jury instruction; (2) advising Petitioner not to testify; (3) properly litigate issues during the suppression hearing; (4) advising Petitioner to reject a plea bargain; and (5) neglecting to object to an accomplice jury instruction. See Doc. 1, p. 4a.

Petitioner's pending action claims entitlement to federal habeas corpus relief on the grounds that: (1) PCRA counsel was ineffective for failing to file an amended PCRA petition asserting claims of ineffective assistance by trial and appellate counsel; (2) trial counsel provided ineffective assistance for failing to fully apprise Petitioner of the Commonwealth's pre-trial plea offer; (3) trial counsel erred by advising Livingston not to testify at trial; (4) trial counsel was deficient for not objecting to the trial court's accomplice jury instruction; (5) trial counsel was ineffective for not objecting to the introduction of prior bad act testimony; and (6) the cumulative affect of trial counsel's errors denied Petitioner a fair trial. Respondents have filed a response arguing that Livingston is not entitled to relief.[5]  This matter is ripe for consideration.

## Discussion

## Ineffective Assistance of PCRA counsel

Collateral relief under the PCRA "permits motions for post-

---

[5]  Respondents do concede that "Petitioner timely filed his federal habeas corpus petition."  Doc. 13, p. 15, n. 6.

conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

Respondents contend that Petitioner's pending argument (Claim 1) that his PCRA counsel was ineffective for failing to file an amended PCRA petition is not properly asserted because it is precluded from consideration by 28 U.S.C. § 2254(i). See Doc. 13, p. 17.

§ 2254(i) provides the "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." The unambiguous statutory language of § 2254(i) clearly precludes habeas relief for ineffective or incompetence of collateral counsel. Courts considering similar claims have reiterated that ineffectiveness of PCRA counsel cannot be a basis for federal habeas corpus relief. See Pennsylvania v. Finley, 481 U.S. 551, 557 (1987); Taylor v. Horn, 504 F.3d 416, 437 n. 17 (3d Cir. 2007).

Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to his argument (Claim 1) that his PCRA counsel was ineffective for failing to file an amended PCRA petition.

**Exhaustion of State Court Remedies**

Title 28 United States Code Section 2254(b)(1) provides that an application for a writ of habeas corpus filed on behalf of a person in custody pursuant to the judgment of a State court cannot be granted unless the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available state corrective process; or there are existing circumstances which render the state process ineffective.[6]  The exhaustion requirement is not a mere formality.  It serves the interests of comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights.  <u>Crews v. Horn</u>, 360 F.3d 146, 151 (3d Cir. 2004).

The Third Circuit Court of Appeals has stated that "[U]nder 28 U.S.C. § 2254(c), such a petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." <u>Wenger v. Frank</u>, 266 F.3d 218, 223-24 (3d Cir. 2001).

"A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's

---

[6] However, a § 2254 petition may be denied on the merits notwithstanding the failure of a petitioner to exhaust available state court remedies.

established appellate review process.'"  Woodford v. Ngo, __ U.S.

__, 126 S.Ct. 2378, 2386-87 (2006) (internal citations omitted);

O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)(while

exhaustion does not require state prisoners to invoke

extraordinary remedies, the state courts must be afforded one

full opportunity to resolve any constitutional issues via

completion of the State's established appellate review process).

The Supreme Court in O'Sullivan explained, that state prisoners

must "file petitions for discretionary review when that review is

part of the ordinary appellate review procedure in the State."

Id. at 847.  The Supreme Court added that, in determining whether

a state prisoner has preserved an issue for presentation in a

federal habeas petition, it must be determined not only whether a

prisoner has exhausted his state remedies, but also whether he

has properly exhausted those remedies, i.e., whether he has

fairly presented his claims to the state courts.  See id. at 848.

     Fair presentation requires that the "substantial

equivalent" of both the legal theory and the facts supporting the

federal claim are submitted to the state courts, and the same

method of legal analysis applied in the federal courts must be

available to the state courts.  Evans v. Court of Common Pleas,

959 F. 2d 1227, 1230 (3d Cir. 1992); Lambert v. Blackwell, 134

F.3d 506, 513 (3d Cir. 1997).  Moreover, to satisfy exhaustion,

the state court must be put on notice that a federal claim is

being asserted.  Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.

2001).  The exhaustion requirement is satisfied if the petitioner's claims are presented  through a collateral proceeding, such as a petition under the PCRA, and it is not necessary to present federal claims to state courts both on direct appeal and in a PCRA proceeding.  Evans, 959 F.2d at 1230.

Respondents acknowledge that Claims Two through Five of Livingston's Petition were raised before the Pennsylvania state courts and "those issues were not procedurally defaulted."  Doc. 13, p. 20.  Consequently, Respondents concede that "this Court may address the merits of these claims on federal constitutional grounds."  Id.

However, with respect to Claim Six (the cumulative affect of trial counsel's errors denied Petitioner a fair trial),they argue that said claim "has been procedurally defaulted."  Id.

When a claim has not been fairly presented to the state courts but further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility.  See Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Toulson v. Beyer, 987 F.2d 984, 987-88 (3d Cir.1993).  Such a claim is procedurally defaulted, not unexhausted, and may be entertained in a federal habeas petition if there is a basis for excusing the procedural default.  Procedural default can only be excused if a petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

"Cause" for a procedural default is demonstrated by showing that some objective external factor impeded a petitioner's efforts to comply with the state procedural rule. See Murray v. Carrier, 477 U.S. 488 (1986).  A petitioner established prejudice only by showing that the errors worked to his actual and substantial disadvantage infecting his entire proceeding with error of constitutional dimensions.  See United States v. Frady, 456 U.S. 152, 170 (1982).  In order to set forth a viable fundamental miscarriage of justice argument, a petitioner must present new reliable evidence which supports a claim of actual innocence.  See Schlup v. Delo, 513 U.S. 298, 317 (1995).

Respondent contends that Claim Six was not raised on Petitioner's direct appeal.  It was also not alleged in Livingston's PCRA petition or in the concise statement of matters pursuant to Pa. Rule of Civil Procedure 1925(b) which Livingston was required to file with the Pennsylvania Superior Court in conjunction with his PCRA appeal.

Rather, said argument was raised for the first and only time in Petitioner's PCRA appellate brief to the Pennsylvania Superior Court.  See Doc. 13, p. 1.8.  The Respondent adds that Livingston "fails to allege cause and prejudice."  Id. at p. 20 n. 12.  Nor has he pointed to any governmental interference or alleged any fundamental miscarriage of justice.

Clearly a prolonged delay in disposition of a state PCRA action, can be a basis to excuse compliance with the exhaustion

requirement.  However, in the present case there has been a final disposition of the state PCRA action and it was not the delay which prevented exhaustion of Claim Six, rather the procedural default resulted from the failure to include that argument in Livingston's direct appeal, his counseled Amended PCRA petition as well as the Rule 1925(b) statement required for his PCRA appeal to the Superior Court.  Hence, this Court agrees that Claim Six was procedurally defaulted.

Based upon a thorough review of the record, Livingston has failed to establish cause for the procedural default and resulting prejudice.  Petitioner has also not established that failure to entertain his procedurally defaulted claim will result in a fundamental miscarriage of justice as contemplated under Schlup.  Pursuant to the above discussion Petitioner has failed to satisfy his burden of showing cause and prejudice for this procedural default.  Consequently, this Court cannot address the merits of Livingston's procedurally defaulted Claim Six and said argument will be dismissed.

**Standard of Review**

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court

reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).[7]  See generally, Gattis v. Snyder, 278 F.3d 222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001).  The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.  Williams v. Taylor, 529 U.S. 362, 404-405 (2000).  As explicated in Bell, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . .

---

[7]  Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims. <u>Id</u>. at 694-98. Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not. 28 U.S.C. § 2254(e)(1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of § 2254 petitions is whether the state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the particular case. <u>See</u> <u>Keller v. Larkins</u>, 251 F.3d 408, 417-18 (3d Cir. 2001)( a district court entertaining a § 2254 action must first address whether the state court decision was contrary to Supreme Court precedent); <u>Martini v. Hendricks</u>, 188 F. Supp.2d 505, 510 (D. N.J. 2002)(a § 2254 applicant must show that the state court decision was based on an unreasonable determination of facts in light of evidence presented in the state court proceeding).

**<u>Ineffective Assistance of Counsel</u>**

In <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must

show "that counsel's performance was deficient" and that "the
deficient performance prejudiced the defense." Id. at 687;
accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994).  In
Deputy, the Court of Appeals also noted that it was not bound by
any state court determinations as to a counsel's performance.
Id. at 1494.

     To demonstrate deficient performance, a petitioner must
show that "counsel's performance fell below an objective standard
of reasonableness." Strickland, 466 U.S. at 688; Jermyn v. Horn,
266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge
a strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance." Strickland, 466
U.S. at 689; Jermyn, 266 F.3d at 282; Berryman v. Morton, 100
F.3d 1089, 1094 (3d Cir. 1996).  If, under the circumstances,
counsel's actions might be considered sound trial strategy, the
presumption is not rebutted, Strickland, 466 U.S. at 689, because
"substantial deference is to be accorded counsel's tactical
decisions." United States v. Wiener, 127 F. Supp. 2d  645, 648
(M.D. Pa. 2001).  A decision supported by "reasonable
professional judgment does not constitute ineffective assistance
of counsel. See Burger v. Kemp, 483 U.S. 776, 794 (1987).  It
follows that counsel cannot be deemed ineffective for pursuing a
meritless claim.  Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir.
1999).

     A petitioner satisfies the second prong and show prejudice
when "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694; <u>Frey v. Fulcomer</u>, 974 F.2d 348, 358 (3d Cir. 1992)  "Without proof of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." <u>Bell</u>, 535 U.S. at 695 (internal quotations and citation omitted).  In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." <u>Strickland</u>, 466 U.S. at 695; <u>Jermyn</u>, 266 F.3d at 283.[8]

At the time of Petitioner's state court proceedings, <u>Strickland</u>'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims.  **In** addressing Livingston's present ineffective assistance claims, the state courts applied essentially the same two-prong test for ineffective assistance articulated in <u>Strickland</u>.

Specifically, under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel

---

[8]  A court may choose to address the prejudice prong first and reject an ineffective assistance claim solely on the basis that the defendant was not prejudiced.  <u>See</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006).

claims, but is, in substance, identical to the <u>Strickland</u> test.
<u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Pierce</u>, 527 A.2d 973, 975-77 (Pa.
1987).  The Third Circuit Court of Appeals has held that
Pennsylvania's test for assessing ineffective assistance of
counsel claims is not contrary to <u>Strickland</u>.  <u>Jacobs v. Horn</u>,
395 F.3d 92, 107 n.9 (3d Cir. 2005); <u>Werts v. Vaughn</u>, 228 F.3d
178, 204 (3d Cir. 2000).  Thus, it cannot be said that the state
courts applied rules contrary to prevailing principles
established by the United States Supreme Court for the
adjudication of ineffective assistance claims.

Accordingly, under § 2254(d)(1), the relevant inquiry in
addressing the pending ineffectiveness claims is whether the
Pennsylvania's Supreme Court's decision involved an unreasonable
application of <u>Strickland</u> **or** are based on an unreasonable
determination of the facts.  <u>Jacobs</u>, 395 F.3d at 107 n.9; <u>Werts</u>,
228 F.3d at 204.

**<u>Plea Offer</u>**

It is undisputed that the Commonwealth extended a plea
agreement offer to Livingston at the time of his preliminary
hearing.  The offer provided that if Petitioner waived his
hearing and entered a guilty plea, the Commonwealth would waive a
five (5) year mandatory minimum sentence that was applicable to
the drug possession charge and drop the communication facility
charge.  <u>See</u> Doc. 13, p. 13.  Petitioner waived his preliminary
hearing but eventually elected to reject the plea offer and
proceed with pre-trial motions and trial.

In Claim Two, Petitioner argues that his trial counsel provided ineffective assistance for failing to fully apprise him of the Commonwealth's pre-trial plea offer.  Specifically, it is asserted that counsel failed to fully inform Petitioner of the advantages and disadvantages of the offer.  It is also asserted that Livingston was not advised of the relevant sentencing laws. See Doc. 1, p. 12.

Respondents asserts that Petitioner is not entitled to federal habeas corpus relief because trial counsel properly advised about sentencing ramifications if he pursued pre-trial motions and proceeded to trial.  See Doc. 13, p. 25.

Criminal defendants who enter into plea agreements must be advised of the direct consequences of their plea.  The Court of Appeals for the Third Circuit has stated that the only consequences considered direct are the maximum prison term and fine for the offense charged.  Parry v. Rosemeyer, 64 F.3d 110, 113-14 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996).  There is no due process requirement that a defendant be advised of adverse collateral consequences of pleading guilty, even if they are foreseeable.  Belle v. Varner, 2001 WL 1021135 *10 (E.D. Pa. 2001).

In a case cited by Petitioner, Boyd v. Waymart, 579 F.3d 330 (3d Cir. 2009), the Third Circuit Court of Appeals reiterated that counsel must directly communicate to a criminal defendant

the available options and consequences of a plea offer.[9]   The Pennsylvania state courts in addressing this claim asserted that trial counsel gave PCRA testimony wherein he did not contradict Petitioner's assertion that he was not advised at the time of his hearing what the mandatory penalties could be imposed.   However, the state courts noted that trial counsel further stated that after undertaking discovery which included obtaining the State Police lab results as to the weight of the cocaine found at the scene, he advised Livingston by letter dated April 29, 2004 that if he pled guilty he would be facing a five (5) to ten (10) year prison sentence.   Thereafter, Petitioner and trial counsel met on May 3, 2004 and discussed the plea offer including the possible mandatory sentences which could be imposed.

According to trial counsel's testimony, Petitioner was also informed by letter dated May 11, 2004 as to the consequences that filing pre-trial motions would have on the plea offer. Despite that warning, Petitioner elected to pursue pre-trial motions.   Prior to a hearing on the pre-trial motion the Commonwealth indicated that the same plea offer was still available, however, Livingston rejected it because his plea would result in a parole violation from a prior conviction.   Finally, the state courts noted Petitioner's PCRA testimony acknowledged that trial counsel did not advise him to reject the plea offer.

---

[9]   Unlike Boyd, this is not a case where it is alleged that the details of the plea offer were made to a relative of the defendant as opposed to the defendant himself.

Based upon the above testimony the trial court found that
Petitioner's counsel provided him with sufficient information
with regarding the plea offer.

In his reply, Petitioner "concedes that he was notified by
counsel of a plea offer and its terms." Doc. 17, p. 2. He also
acknowledges that counsel sent him two letters regarding the plea
offer. However, Livingston's reply contends for the first time
that counsel was deficient for not properly advising him of the
strength of the Commonwealth's case.[10]

Petitioner has provided this Court with a copy of a letter
dated April 29, 2004 which he received from counsel, the letter
includes the (1) weight of the cocaine at issue; (2) a narrative
regarding the statement of the confidential informant as to the
contemplated drug transaction; (3) Livingston's prior criminal
record; (4) copies of the relevant Pennsylvania sentencing
guidelines. See Doc. 17-2, Exhibit A. The letter also provides
the details of the plea agreement, noting that he will be facing
a five (5) to ten (10) year state sentence and further notes that
Petitioner will also be subjected to a parole revocation hearing.

A second letter from counsel to petitioner dated May 11,
2004 (and also submitted by Livingston to this Court) clearly
states that the filing of pre-trial motions would jeopardize the
plea offer lists the trial related issues and advises Petitioner

---

[10] Since Livingston's claim as to the strength of the
Commonwealth's case was not included in his petition, it was not
properly raised.

that those matters will be discussed when they meet later that week.  See Doc. 17-4, Exhibit C.

Based upon the above undisputed facts, especially the two letters sent by trial counsel to Petitioner, this Court is satisfied that the due process requirements set forth in Boyd, Belle, and Parry were satisfied.  It is apparent that trial counsel adequately discussed with Petitioner the terms and ramifications of the plea offer as well as the components of the Commonwealth's case. Relief will be denied with respect to Claim Two.

**Failure to Testify**

In Claim Three, Petitioner contends that trial counsel was deficient for advising him not to testify at trial.  Respondent counters that it was Petitioner's decision not to testify and that it was also reasonable for trial counsel to advise Livingston not to testify since he had both prior crimen falsi[11]

---

[11]   Crimen falsi offenses are "in the nature of perjury, criminal fraud, embezzlement, false pretense, or any other offense, the commission of which involves some element of untruthfulness or falsification." Walker v. Horn, 385 F.3d 321, 334 (3d Cir. 2004). When a criminal defendant takes the stand as a witness and puts his credibility at issue, the Commonwealth may introduce as rebuttal evidence the defendant's convictions or prior convictions for offenses involving dishonesty or false statement.
Federal Rule of Evidence 609(a)(2) is similar to the state rule at issue here by providing for the admission of crimen falsi convictions for the purpose of attacking the credibility of a witness, and a district court is without discretion to weigh the prejudicial effect of the proffered evidence against its probative value. Walden v. Georgia Pacific, 126 F.3d 506, 523-24 (3d Cir. 1997). "The automatic admission provision of Rule 609(a)(2) expresses the idea that some individuals who are found to have been
(continued...)

convictions as well as a prior drug delivery conviction.[12]  See
Doc. 13, p. 28.

As previously discussed, a petitioner must show that he
was prejudiced by the deficient performance.  Strickland, 466
U.S. at 687.  The prejudice test is whether there is a reasonable
probability that, but for the deficient performance, the outcome
of the proceedings would have been different.  Id. at 694.  See
also Frey, 974 F.2d at 358 ("[A] petitioner must demonstrate a
reasonable probability that, but for the unprofessional errors,
the result would have been different . . . .").  A reasonable
probability is one that is "sufficient to undermine confidence in
the outcome."  Strickland, 466 U.S. at 694.  "Without proof of
both deficient performance and prejudice to the defense . . . it
could not be said that the sentence or conviction resulted from a
breakdown in the adversary process that rendered the result of
the proceeding unreliable, and the sentence or conviction should
stand."  Bell, 535 U.S. at 695 (internal quotations and citation
omitted).

Where there is a reasonable basis for a tactical decision
made by defense counsel, a finding of ineffective assistance

---

[11](...continued)
dishonest in other contexts are presumed to be more prone to
perjury than others."  Id. at 523.


[12] Due to the passage of time, Petitioner's crimen falsi
convictions were not automatically admissible under Pennsylvania
state law.  However, the admission of said convictions was subject
to the discretion of the trial court.

cannot be reached.  See Burger v. Kemp, 483 U.S. 776 (1987).

"[S]ubstantial deference is to be accorded counsel's tactical

decisions."  United States v. Wiener, 127 F. Supp. 2d  645, 648

(M.D. Pa. 2001).

Given the fact that if Petitioner took the stand in his

own defense there was a potential that the jury would learn that

he had multiple prior convictions for dishonesty as well as a

prior drug dealing conviction which would undermine any testimony

that the drugs seized were for his own personal use, there was a

reasonable basis for any alleged advice not to testify given by

defense counsel.  Accordingly, a finding of ineffective

assistance is precluded.

Moreover, the trial court engaged in two detailed

colloquies with the Petitioner wherein he was advised of his

right to testify and given an opportunity to reconsider that

decision. See Doc. 13-3, p. 196.  During the second colloquy,

Livingston stated on the record that he was neither forced or

threatened by anyone not to testify.  See id. at p. 202.

Given the above factors, it cannot be said that the state

court determinations were contrary to, or an unreasonable

application of federal law as required under Bell.  Relief will

be denied with respect to Claim Three.

**Jury Instructions**

Claim Four of Livingston's Petition asserts that his

privately retained trial counsel was deficient for not objecting

to the trial court's accomplice jury instruction otherwise known
as a corrupt and polluted source instruction.  The gist of
Petitioner's argument is that the trial court erred by describing
Flickinger as being his accomplice.

It is undisputed that during the course of instructing the
jury the trial court used the word accomplice once in reference
to Flickinger.  See Doc. 13, p. 33.  The trial court asserted
that it did so for the benefit of the petitioner in order to
remind the jury that Flickinger was involved in illegal drug
activity and that the jury should view his testimony carefully
and cautiously.

Counsel may be deemed ineffective for failure to object
to jury instructions.  Priester v. Vaughn, 382 F.3d 394, 401-02
(3d Cir. 2004).[13]  However, "reviewing courts must be deferential
in their scrutiny and scrupulously avoid the distortions of
hindsight by viewing performance from counsel's perceptive at the
time."  Everett v. Beard,  290 F.3d 500, 509  (3d Cir.  2002).
As previously noted, there is a  strong presumption that
counsel's conduct was reasonable.  Strickland, 466 U.S. at 690.

---

[13]  Federal habeas corpus relief may issue only if the court
finds that an error in the jury charge "had substantial and
injurious effect or influence in determining the jury's verdict."
Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  In Burger, the
Supreme Court ruled that jury instructions that may have
erroneously shifted the burden of proof on criminal intent to
commit murder did not warrant habeas corpus relief where "'the
evidence was so dispositive of intent' that it can be said beyond a
reasonable doubt that 'the jury would have found it unnecessary to
rely on the presumption.'" Burger, 483 U.S. at 782 n.5.

Propriety of jury instructions is to be determined by assessing the entire set of instructions.  See  Victor v. Nebraska, 511 U.S. 1, 5 (1994); United States v. Issac, 134 F.3d 199, 203 (3d Cir. 1998).  The primary point of inquiry is "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury, and [we] reverse only if the instruction was capable of confusing and thereby misleading the jury." Bennis v. Gable, 823 F.2d 723, 727 (3d Cir. 1987) (internal quotations omitted); United States v. Zehrbach, 47 F.3d 1252, 1264, (3d Cir. 1995).

It is apparent to this Court that the trial court acted in a prudent manner when it instructed the jury that Flickinger was himself involved in drug trafficking and that his testimony should be viewed with caution.  While the one time mention of the word accomplice by the trial court while instructing the jury was arguably ill advised,[14] it is the conclusion of this Court that the state court's determination that the allegedly erroneous jury instruction did not undermine the truth determining process to the extent that a reasonable adjudication of guilt or innocence did not occur was not an unreasonable application of Supreme Court principles.

Moreover, there has been no sufficient showing that the outcome of the proceedings would have been different but for the

---

[14]   When viewed as a whole the jury instructions clearly did not provide any basis for a conclusion that Flickinger and Petitioner were accomplices.

inclusion of the challenged instruction.  Based upon those
factors and especially noting that the challenged instruction was
beneficial to Petitioner, Petitioner's trial counsel cannot be
deemed to have been deficient for failure to object to the
instruction.  Accordingly, there is no basis for federal habeas
corpus relief with regards to Claim Four.

**Prior Bad Acts**

Claim Five contends that trial counsel was deficient for
not objecting to the introduction of prior bad act testimony.
See Doc. 1, p. 26.  Specifically, Petitioner claims that
Flickinger's highly inflammatory trial testimony as to
Petitioner's prior involvement in drug activity should have been
objected to by his trial counsel because the credibility of the
confidential informant had not been established.

Respondent does not dispute that counsel did not object to
or seek a limiting instruction regarding the prior bad act
testimony.  However, Respondent concludes that the failure to do
so constituted harmless error.  In the alternative, Respondent
asserts that the testimony was relevant and admissible to
demonstrate intent and common plan.

As a general rule, federal habeas corpus review is not
available to adjudge the correctness of a state court evidentiary
ruling.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);
Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001);
Lupkovich v. Cathel, Civil No. 04-5399, 2006 WL 3313975, at *4

(D. N.J., Nov. 14, 2006) ("Because the trial court's ruling
limiting the cross-examination of Chester Anderson regarding his
reputation for violence presents a question of state evidentiary
law, it is not cognizable under § 2254.") In short, evidentiary
rulings are matters of state law, and are not within the province
of a federal habeas corpus court. See King v. Kerestes, Civil
No. 09-1749, 2009 WL 5178805, at *3 (E.D. Pa., Dec. 21, 2009).
It is only where an evidentiary ruling "so infuse[s] the trial
with unfairness as to deny due process of law," Lisenba v.
People, 314 U.S. 219, 228 (1941), that federal habeas corpus
review may exist.

     Evidence is excluded only if its prejudicial effect
substantially outweighs its probative value. Perryman v. H & R
Trucking, 135 Fed. Appx. 538, 541-42 (3d Cir. 2005). This well
settled evidentiary principle "implements a presumption in favor
of admissibility." See id. at 542. It is also well recognized
that a trial judge is in the best position to render a
determination as to potential prejudicial effect.

     Evidence pertaining to a criminal defendant's prior bad
acts or unrelated criminal behavior is generally inadmissible.
The trial court in addressing this argument, concluded that the
testimony was admissible "as evidence of motive, intent common
scheme, etc." Doc. 13-5, p. 161. This Court agrees with that
analysis. While it would be improper to allow admission of such
evidence for the sole purpose of showing that Livingston had a

propensity for criminal conduct, the testimony was relevant and properly admitted to show that Petitioner had engaged in prior drug transactions with Flickinger as to establish Livingston's motive in possessing drugs on the date of his arrest.

Moreover, trial counsel had previously unsuccessfully requested the trial court to exclude such evidence, he cannot be deemed ineffective for failing to pursue the same failed argument for a second time.

With respect to Respondent's harmless error argument, the United States Supreme Court has stated that when a federal judge in a habeas proceeding is in grave doubt about whether trial error had substantial and injurious effect or influence in determining a jury's verdict, that error is not harmless. O'Neal v. McAninch, 513 U.S. 432, 436 (1995). "The relevant question is whether the error substantially affected the actual thinking of the jury or the deliberative process by which it reached a verdict." Yohn v. Love, 887 F. Supp. 773, 795 (E.D. Pa. 1995)(citation omitted).

The Court of Appeals for the Third Circuit has determined that evidentiary errors are harmless "if it is highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction." " United States v. Sallins, 993 F.2d 344, 348 (3d Cir. 1993). A determination as to whether an error is harmless depends on such factors as the importance of the testimony, whether the testimony was cumulative, the presence

or absence of corroborating or contradictory evidence and the overall strength of the prosecution's case.  <u>United States v. Castelan</u>, 219 F.3d 690, 696 (7th Cir. 2000).  Courts must inquire as to whether the prosecution's case would have been significantly less persuasive had the improper evidence been excluded.  <u>Scheneble v. Florida</u>, 405 U.S. 427, 432 (1972).

Based upon a careful review of the overall jury instructions, It also does not appear that the failure of trial counsel to seek a limiting instruction was of such magnitude as to warrant federal habeas relief as contemplated in <u>O'Neal</u>.  Claim Five will likewise be dismissed for lack of merit.  The petition for writ of habeas corpus will be denied.  An appropriate Order will enter.[15]

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: JULY 23, 2012

---

[15]  Based upon the court's determination herein, Petitioner's motion to expedite proceedings (Doc. 28) will be denied as moot.